# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNIVERSAL DELAWARE, INC.,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:10-mc-00104** |
| | ) | **Judges Haynes/Bryant** |
| **COMDATA NETWORK, INC.,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion to Modify Subpoena and for Protective Order (Docket Entry No. 1) filed by FleetOne, L.L.C. ("Fleet One").[1]  Comdata Network, Inc. d/b/a/ Comdata Corporation ("Comdata") has filed a response in opposition to the Motion (Docket No. 14), to which Fleet One has replied (Docket No. 22).  The Court will grant the Motion in part, and deny it in part.

## I. BACKGROUND

This discovery dispute arises out of claims brought against Comdata and others in a consolidated class action lawsuit pending in the Eastern District of Pennsylvania styled Universal Delaware, Inc. v. Comdata Corp., Case No. 07-1078-JKG   In that action, Plaintiffs, primarily a group of independent truck stop owners, accuse the Defendants, including Comdata and certain chain truck stops, with violating Sections 1 and 2 of the Sherman Act.  Plaintiffs also accuse Comdata and its parent, Ceridian Corporation, with participating in a scheme to monopolize.

Comdata is an issuer of fleet cards used by truckers and trucking fleets to purchase diesel fuel and other items at truck stops. Fleet cards are different from typical credit cards because, not

---

[1]Also pending is a request for oral argument on the Motion.  (Docket No. 10).  Because the parties have fully briefed the issues, the Court finds oral arguments to be unnecessary and the request for the same will be denied.

only do they facilitate purchases, they can also be used to monitor the location, fuel usage, and other key information about individual trucks. Comdata's largest competitor in the relevant market is Fleet One, another issuer of fleet cards. Fleet One is not a party to the Pennsylvania action.

In the Pennsylvania action, Plaintiffs basically allege that Comdata entered into an agreement whereby certain major truck stop chains – Pilot Travel Centers, LLC, TravelCenters of America, LLC, and Love's Travel Stops & Country Stores – agreed not to accept payment cards issued by others, including Flying J, Inc. Further, Comdata allegedly implemented a two-tier pricing scheme under which it charged independent truck stops dramatically higher fees for processing transactions than the fees assessed the major chain truck stops.

The alleged agreement, according to Plaintiffs, has hampered competition in the trucker fleet card market, a market which includes the Comdata Card, Flying J's TCH Card, and the Fleet One Card. The upshot of the allegations is that Comdata's conduct make its competitors' cards, like the TCH Card, uncompetitive, thereby allowing Comdata to achieve monopoly power.

On May 26, 2010, Plaintiffs in the Pennsylvania action served Fleet One with a subpoena seeking deposition testimony from a corporate designee on a wide variety of topics, primarily related to documents which Fleet One had previously produced. This was followed a day later by a subpoena from Comdata to Fleet One which also sought testimony on a wide variety of topics from a Rule 30(b)(6) representative.

After meeting and conferring as required by the federal and local discovery rules, Fleet One and Comdata were able to resolve all but two of the 28 topics listed in Comdata's subpoena. The two topics upon which agreement could not be reached are:

> 13. The identities and number of the trucking fleet customers that Fleet One has won
> in head to head competition with Comdata, and the reasons that Fleet One won those

customers' business.

> 23. Fleet One's cooperation or coordination with truck stop chains to secure business from trucking fleets or truckers.

Fleet One objects to any discovery on these topics on the grounds that the same involve commercially sensitive trade secrets which would cause irreparable harm if disclosed to its primary competitor, Comdata.

This is not the first time that the Court has considered a subpoena directed to Fleet One in the Pennsylvania action. Prior to the consolidation of the Pennsylvania action, Fleet One received a subpoena duces tecum from Plaintiffs seeking material that Fleet One claimed was protected as confidential and/or trade secret information. Over Fleet One's objection, this Court ruled that the materials sought from Fleet One were discoverable, subject to a Protective Order and Universal Data's payment of the reasonable costs incurred by Fleet One in complying with the discovery requests. (See, Universal Delaware Inc. v. Comdata Corp., No. 3:08-mc-00204, Docket Nos. 19 & 21).

## II. DISCUSSION

Generally, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). However, under Rule 45, the Court, upon motion, may modify or quash a subpoena if it requires the recipient to disclose "a trade secret or other confidential research, development, or commercial information." Id. 45(c)(3)(B). "Rule 45 should be read in conjunction with the limitations of discovery found in Rules 26 and 34 of the Federal Rules of Civil Procedure," and, therefore, "the court must balance the burden of production against the need for the requested documents." BSN Medical, Inc. v. Parker Medical Associates, LLC, 2011 WL 197217 at *2 (S.D.N.Y. Jan. 19, 2011).

In striking the balance, courts commonly undertake a three-prong inquiry. Initially, the court considers whether the party (or non-party) seeking protection has shown that the information sought is a trade secret or otherwise confidential, and shown that its disclosure might be harmful. If so, the court looks to whether the party seeking the discovery has established that the information is relevant and necessary to the underlying action. Finally, if those two inquiries are answered in the affirmative, the court then balances the need for discovery of the information against the alleged injury which will result from disclosure. See, A Major Difference, Inc. v. Wellspring Products, LLC, 243 F.R.D. 415, 416-17 (D. Colo. 2006); Spartanburg Reg. Healthcare, Sys. v. Hillenbrand Indus., Inc., 2005 WL 2045818 at **2-3 (W.D. Mich. 2005); Mannington Mills v. Armstrong World Indus., Inc., 206 F.R.D. 525, 528-29 (D. Del. 2002). Further, with regard to the final prong, "where, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party." Fears v. Wilhelmina Model Agency, Inc., 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) (collecting cases); see, Premier Election Solutions, Inc. v. Systest Labs Inc., 2009 WL 3075597, at **2-3  (D. Colo., Sept. 22, 2009) ("While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated").

## A.  Trade Secret or Confidential Information and Harm to Fleet One

In determining whether requested information is a trade secret or otherwise confidential within the meaning of Rules 26 and 45, a court may consider if the request seeks the "'type[] of information that courts have generally viewed as trade secrets or confidential information,' such as product formulas, marketing plans, or information relating to marketing decisions." Allen v.

4

<u>Howmedica Liebinger, GmhH</u>, 190 F.R.D. 518, 526 (W.D. Tenn. 1999) (quoting, <u>American Std.,</u> <u>Inc. v. Pfizer, Inc.</u>, 828 F.2d 734, 740 (Fed. Cir. 1987)).  In this regard, Tennessee courts have indicated that "'a trade  secret may consist of any formula, process, pattern, device or compilation of information that is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not use it.'" <u>Id</u>. (quoting,  <u>Hickory Specialties, Inc. v. B & L</u> <u>Lab., Inc.</u>, 592 S.W.2d 583, 586 (Tenn. Ct. App.1979)).  In addition, a court may consider such things as the extent to which the information is known both inside and outside the business; the precautions taken to guard the secrecy of the information; the value of the information; and the amount of time and expense it would take for others to acquire and duplicate the information.  <u>See</u>. <u>Deegan v. Strategic Azimuth, LLC</u>, 2011 WL 778407 at *3 (D.D.C.  Mar. 17, 2011); <u>Johnson Serv.</u> <u>Group, Inc. v. Olivia France</u>, 2011 WL 111582 at *5 (N.D. Tex. 2011); <u>Hamilton-Ryker Group LLC</u> <u>v. Keymon</u>, 2010 WL 323057 at *13 (Tenn. Ct. App. June 28, 2010).

In support of its position that topics 13 and 23 encompass confidential and secret information, Fleet One has tendered the Declaration of its President, Walter A. Roberts.  In that Declaration, Mr. Roberts states that, given the breadth of the topics covered by the subpoena, Fleet One is "concern[ed] about its ability to protect confidentiality and commercially sensitive information"; that the identities and number of fleet customers it has won in head-to-head competition with Comdata is highly confidential information, and "most especially the reasons that Fleet One won those customers' business"; that information about Fleet One's cooperation or coordination with truck stops to secure business is also highly confidential; and that Fleet One "takes affirmative and specific steps to protect its confidential information from disclosure," including shredding such documents after use, sharing it only on a "need to know basis" with those in the

company and requiring a confidentiality agreement with non-competing third parties.  (Docket No.

3, Roberts Decl. ¶¶ 10-12).  Additionally, Mr. Roberts states:

> 13.  The trucker fleet card industry is extraordinarily competitive. Fleet One must engage in effective marketing and sales strategies to compete effectively.  Disclosing tactics that have succeeded in generating new clients for Fleet One to Fleet One's competitor would eviscerate Fleet One's competitive advantage.  Explaining what caused a fleet customer to choose Fleet One over Comdata would jeopardize Fleet One's ability to continue to distinguish itself and compete effectively in the marketplace.
>
> 14.  Fleet One would sustain irreparable economic harm if Comdata were to learn information about specific transactions with Fleet One's customer, how Fleet One succeeded in winning a customer away from Comdata, and what cooperative efforts were successful in obtaining new fleet customers.  Disclosure of this information would severely compromise Fleet One's ability to compete in the marketplace, and especially against Comdata.

(Id. ¶¶ 13-14).

Confidential or trade secret status may be established by affidavit.  See, Int'l Coal Group, Inc. v. Tetra Financial, 2010 WL 2079675 at *2 (D. Utah May 24, 2010) ("counsel's affidavit is sufficient to satisfy the court that the Subpoena requires [the non-party] to produce documents that contain sensitive and confidential commercial information").  It is true, as Comdata observes, some of the assertions made by Mr. Roberts are conclusory, but the Court finds this of little significance because the Court agrees with Fleet One that the confidential nature of the information sought is self-evident.

As this Court noted in its prior ruling involving the discovery dispute between Universal Data and Fleet One, a request for strategic information and how one competes in the marketplace is "confidential by its very nature," particularly when steps are taken to keep this information from the public.  (Case No. 3:08-mc-00204, Docket No. 19 at 5-6).  Moreover, customer lists can be trade secrets, particularly when the list is sought by a competitor and is not otherwise readily

ascertainable.  See, North Atlantic Inst. v. Haber, 188 F.3d 38, 44 (2d Cir. 1999); Sasqua Group, Inc.

v. Courtney, 2010 WL 3613855 at *5 (E.D.N.Y. Aug. 2, 2010); MP TotalCare Serv., Inc. v.

Mattimoe, 648 F. Supp. 2d 956, 966 (N.D. Oh. 2009).  Additionally, "the undisputed fact that [Fleet

One] and [Comdata] are direct competitors in the same industry provides a presumption that

requiring [Fleet One] to provide [the confidential] information to [Comdata] would be harmful."

Int'l Coal, 2010 WL 2079675 at *2.

Fleet One has carried it burden of showing that discovery on Topic 13 and 23 will require

the disclosure of trade secrets and/or confidential information, and that the disclosure of the

information could cause harm to Fleet One.

## B.  Relevancy and Necessity to the Pennsylvania Action

Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably

could lead to another matter that could bear on any issue that is or may be in the case." Oppenheimer

Fund, Inc. v. Saunders, 437 U.S. 340, 352 (1978).  Necessity, for purposes of Rule 45(c)(3), entails

an inquiry into whether there are other means to obtain the information and whether obtaining the

information through those means would be unduly burdensome.  See, HCP Laguna Creek, CA, LPR

v. Sunrise Sr. Living Mgmt., Inc., 2010 WL 890874 at *2 (M.D. Tenn. Mar. 8, 2010).  The scope

of discovery may be more limited where it is directed at a non-party, but a court should exercise its

discretion with the recognition that "the discovery rules are to be accorded broad and liberal

construction."  Med. Tech., Inc. v. Breg, 2010 WL 3734719 at *3 (E.D. Pa. Sept. 21, 2010).

In this case, Comdata generally asserts that the information it seeks is relevant and necessary

to show that competition in the fleet card market is robust.  The Court agrees with that position

insofar as Comdata seeks information about the number and identities of trucking fleet customers

that Fleet One has won in head-to-head competition with Comdata.

It seems clear that the number of customers Fleet One has won over from Comdata is directly relevant to Comdata's position in the Pennsylvania action that competition in the relevant market is fierce and that Comdata has not monopolized the market. As for the identities of those customers, this seems also necessary because, as the Court understands it, "customers" includes fleet customers and the mere number of customers would not adequately reflect the amount of business Fleet One has taken away from Comdata. That is, information about Fleet One capturing a particularly large or significant fleet customer of Comdata would be stronger evidence of robust competition, than the capture of a smaller or otherwise less significant fleet.

As for the remainder of topic 13 and all of topic 23, Comdata has not convinced the Court that this information is relevant or necessary. In opposing Fleet One's Motion, Comdata argues:

> The Universal Delaware Plaintiffs assert that Comdata has monopoly power in a market for so-called Trucker Fleet Cards, which, they say, is a "two-sided market" characterized by network effects. (Fleet One Ex. 1 at ¶ 125). In other words, in the card market the Universal Delaware Plaintiffs posit, there are two sets of customers – truck stops and trucking fleets – and demand for a particular card by truck stops is driven by how many trucking fleets use that card, and vice versa. (Id.) The Universal Delaware Plaintiffs assert further that the independent truck stops are unable to switch from the Comdata Card to other payment cards, like Fleet One, and thereby avoid what they say are Comdata's supra-competitive fees, because an insufficient number of trucking fleets use such other cards due to Comdata's supposed market dominance. (Id. at ¶ 122). Among the pillars of the Universal Delaware Plaintiffs' Sherman Act Section 2 claim is Comdata's supposed "manipulat[ion] [of] its relationships with Trucker Fleets to preserve and enhance its market power with respect to [i]ndependents." (Id. at ¶ 126) (emphasis added).

(Docket No. 8 at 14).

While the information about the names and identities of customers that Fleet One has won from Comdata appears relevant to Comdata's defense in the Pennsylvania action, Comdata does not adequately explain why the reasons some of its customers left it for Fleet One, or how Fleet One's

8

cooperation with chain truck stops, goes to the issue of Comdata's alleged monopoly power. Even if a "pillar" of Plaintiffs' Section 2 Sherman Act claim relates to Comdata's alleged manipulation of *its relationship* with trucker fleets to preserve its power with respect to independent truck stops, evidence of Fleet One's relationship to chain truck stops would not appear to prove or disprove the contention that Comdata manipulates the market in a way deleterious to independent truck stops. Nor would such evidence appear to go to the issue of whether Comdata's two-tier pricing scheme works to the detriment of the independent truck stops. See, Premier Election, 2009 WL 2085597 at * 9 (movant "must prove that it has a 'substantial need' for the discovery which 'cannot be otherwise met without undue hardship. . . .' Fed. R. Civ. P. 45(c)(3)(B)(iii)").

Based on the foregoing, the Court concludes that Comdata has shown relevancy and need for the names and identities of the customers Fleet One has won from it, but has not shown the same for the information requested by the remainder of topic 13, or the information covered by topic 23. Even if the conclusion that nothing other than the number and identities of customers should be disclosed is incorrect, the Court, as explained below, concludes that the harm from disclosure of Fleet One's business strategy exceeds any alleged injury to Comdata.

## C. **Balancing The Need for Discovery Against The Injury From Non-Disclosure**

In balancing need against potential injury, the Court preliminarily notes that Fleet One has not sought to preclude all discovery from Comdata. Quite the contrary, Fleet One seeks protection with regard to only two out of 28 topics covered by the subpoena on topics which it asserts, quite understandably, are of extreme importance to its business.

As the discussion thus far makes clear, the Court has drawn a distinction between (1) the names and identities of Comdata's former customers; and (2) how Fleet One won those customers

9

from Comdata, and Fleet Ones's cooperation and coordination with chain truck stops to secure customers.

With regard to the names and identities of customers, the Court concludes that the balance tips in favor of disclosure. As noted, this information appears central to Comdata's position that the fleet card market is highly competitive, and could also be relevant to rebut the claim that Comdata has a monopoly power. On the other hand, and as has also been noted, customer lists can be confidential within the meaning of the discovery rules, at least where they are not otherwise available.

Comdata, however, is not seeking Fleet One's entire customer list, only a listing of those customers which left it for Fleet One. While Fleet One asserts that its customer list is highly confidential, it also argues that "Comdata surely knows better than Fleet One which fleet customers Comdata has lost[.]" (Docket No. 2 at 10). This suggests that the identity information of lost customers is available from a source other than Fleet One, and is not truly secret, only difficult to discern.

Turning to the remainder of topic 13 and all of topic 23, the Court concludes that the balance tips decidedly in favor of protection from disclosure. Without showing any real need for the information in relation to the Pennsylvania action, Comdata seeks discovery from its primary competitor – a non-party – about how that competitor woos customers and what relationship that competitor has with other companies with which Comdata deals or might deal. This is clearly confidential information and information which allows Fleet One to compete effectively in the marketplace against Comdata. Notwithstanding the broad scope of discovery in civil litigation, information which could place one at a competitive disadvantage is generally afforded protection

10

under the discovery rules.  See, Recycled Paper Greetings, Inc. v. Davis, 2008 WL 440458 at **3-4

(N.D. Ohio Feb. 13, 2008); Cohen v. City of New York, 255 F.R.D. 110, 118 (S.D.N.Y. 2008).

In concluding that Fleet Data is not required to provide information on topics 13 and 23

(other than the names and identities of former Comdata customers won in direct competition), the

Court recognizes that a Protective Order is in place in this case.  However, "'[t]here is a constant

danger inherent in disclosure of confidential information pursuant to a Protective Order'" and,

"'[t]herefore, the party requesting disclosure must make a strong showing of need, especially when

confidential information sought from a non-party is sought."  Insulate America v. Masco Corp., 227

F.R.D. 427, 434 (W.D.N.C. 2005) (citation omitted); see, In re Vitamins Antitrust Litigation, 267

F. Supp. 2d 738, 740-41 (S.D. Ohio 2003) ("wise course is to nip any potential economic harm" by

quashing subpoena instead of relying on protective order where, among other things, request was

for trade secrets which were the "lifeblood" of the non-party's  well-being and some defendants

were direct competitors of non-party).   Here, Comdata has not established a strong need regarding

the information covered by topics 13 and 23, other than with respect to its former customers.

### III.  CONCLUSION

On the basis of the foregoing, Fleet One's "Motion to Modify Subpoena and for Protective

Order" is hereby GRANTED IN PART and DENIED IN PART as follows:

(1) The Motion is GRANTED with respect to topic 13 insofar as Comdata seeks information

about "the reasons that Fleet One won . . .  customers' business" from  Comdata in head-to-head

competition;

(2) The Motion is also GRANTED with respect to topic 23 which requests information

regarding "Fleet One's cooperation or coordination with truck stop chains to secure business from

trucking fleets or truckers"; and

(3) The Motion is DENIED insofar as Comdata seeks "[t]he identities and number of the trucking fleet customers that Fleet One has won in head to head competition with Comdata" as set forth in topic 13. Any information disclosed about the identity and number of customers covered by topic 13 shall be subject to the Protective Order which has previously been entered in this case;

Finally, Comdata's Motion for Oral Argument (Docket No. 10) is DENIED.

It is SO ORDERED this 21st day of March 2011

*s/ John S. Bryant*
_____
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE